**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| LOCKHEED MARTIN CORPORATION,<br>6801 Rockledge Drive<br>Bethesda, MD 20817<br>Montgomery County<br><br>               Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Serve on: Rod J. Rosenstein, Esq.<br>U.S. Attorney for District of Maryland<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201<br><br>Copy to: Eric H. Holder, Jr.<br>U.S. Attorney General<br>U.S. Dep't of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>Copy to: Steven T. Miller<br>Acting Commissioner of Internal Revenue<br>Internal Revenue Service<br>1111 Constitution Avenue, NW<br>Washington, DC 20224<br><br>               Defendant. | No. |

## COMPLAINT

Plaintiff Lockheed Martin Corporation (Lockheed Martin), by and through counsel,

alleges as follows:

## THE PARTIES

1.      Lockheed Martin is a domestic corporation incorporated in the State of Maryland, with its corporate headquarters at 6801 Rockledge Drive, Bethesda, Maryland 20817.  Lockheed Martin's employer identification number (EIN) is 52-1893632.

2.      Defendant is the United States of America.

## JURISDICTION

3.      Lockheed Martin brings this complaint in accordance with the requirements of section 7422 of the United States Internal Revenue Code (the Code), 26 U.S.C. § 7422, for recovery of federal income taxes erroneously collected from Lockheed Martin for the tax years ending December 31, 2004, December 31, 2005, December 31, 2006, December 31, 2007, and December 31, 2008 (the years at issue).[1]

4.      Lockheed Martin is the common parent of an affiliated group of corporations that have elected to file consolidated federal income tax returns for the years at issue and is therefore the sole agent that is authorized to act in its own name with respect to all matters relating to the tax liability for those consolidated return years under 26 C.F.R. § 1.1502-77(a)(1).

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1346(a)(1).

6.      Venue for this action properly lies in the United States District Court for the District of Maryland under 28 U.S.C. § 1391.

7.      Lockheed Martin is timely filing this complaint as required in section 6532(a)(1) (the relevant notices of disallowance were dated May 24, 2012).

---

[1]      Unless otherwise indicated, all "section" references are to the Internal Revenue Code of 1986 (26 U.S.C.), as amended and as in effect during the relevant year.

## GENERAL ALLEGATIONS

8.      Lockheed Martin seeks to recover the sum of at least $16,920,844, plus statutory interest as the law provides, which sum represents an overpayment by Lockheed Martin of federal income taxes for the years at issue.

9.      Lockheed Martin timely filed federal income tax returns for its 2004 through 2007 tax years with the Internal Revenue Service Center in Ogden, Utah.  Lockheed Martin timely filed its 2008 federal income tax return electronically.

10.     Lockheed Martin paid the full amount of income taxes shown on its federal income tax returns or subsequently assessed for each of the years at issue.

11.     This action arises out of administrative claims for refund that Lockheed Martin submitted for the years at issue.  In those administrative claims, Lockheed Martin claimed (among other things) refunds attributable to (1) additional research credits under section 41 with respect to five projects (which projects are described below), (2) increased deductions under section 199, and (3) an increased amount of extraterritorial income (ETI) exclusion under former section 114.  These claims are described in more detail below.

### Lockheed Martin's Business Operations During the Years at Issue

12.     Lockheed Martin is a global security and aerospace company principally engaged in the research, design, development, manufacture, integration, and sustainment of advanced technology systems and products.  A substantial portion of Lockheed Martin's sales during the years at issue were to agencies of the U.S. Government.

13.     During the years at issue, Lockheed Martin's IS&GS business segment provided federal services, information technology solutions, and advanced technology expertise across a broad spectrum of applications and customers, including software and systems engineering.

14.     During the years at issue, Lockheed Martin's Space Systems business segment provided launch services to both government and commercial customers.  Under this line of business, Lockheed Martin designed, developed, manufactured, and integrated expendable and reusable space launch systems for the Department of Defense, NASA, and commercial customers.

15.     In 2005, Lockheed Martin entered into an agreement with The Boeing Company to create a joint venture that would combine the production, engineering, test, and launch operations associated with U.S. Government launches of Lockheed Martin's Atlas launch vehicles and Boeing's Delta launch vehicles.  The joint venture, named United Launch Alliance, LLC (ULA), commenced operations on December 1, 2006.

**Section 41 Research Credit Claims**

16.     Congress enacted the research credit under section 41 "to encourage business firms to perform the research necessary to increase the innovative qualities and efficiency of the U.S. economy."  S. Rep. No 99-313, at 694 (1986).  Congress has recognized that "research is the lifeblood of our economic progress" and that "effective tax incentives for research and development must be a fundamental element of America's competitiveness strategy."  H.R. Rep. No. 100-1104, Vol. II, at 88 (1988) (Conf. Rep.).

17.     As in effect during the years at issue, section 41 generally provided for a tax credit equal to 20% of incremental "qualified research expenditures" (QREs) over a base

amount.  Section 41(c)(4) provided for an alternative incremental credit and section 41(c)(5) provided for an alternative simplified credit.  Under each version of the credit, the allowable credit was a function of the taxpayer's QREs for the tax year.  Section 41(b)(1) defines "qualified research expenditures."

18.     For its 2004 to 2006 tax years, Lockheed Martin elected to compute its allowable research credit using the alternative incremental credit computation under section 41(c)(4).

19.     For its 2007 and 2008 tax years, Lockheed Martin elected to compute its allowable research credit using the alternative simplified credit computation under section 41(c)(5).  In those tax years, the alternative simplified credit rate was 12%.

20.     During the years at issue, Lockheed Martin incurred QREs, including wages, supplies, and contract research costs, with respect to a variety of research projects.

21.     The Internal Revenue Service denied a portion of the research credits that Lockheed Martin has claimed for the years at issue on the basis that some costs were allegedly not QREs.

22.     The disputed QREs include the costs of wages, supplies, and contract research incurred in connection with the design, development, testing, integration, and fabrication of innovative and unproven prototypes, including four different first-configuration Atlas V launch vehicles and an advanced electronic surveillance and security system.

Atlas V Launch Vehicles

23.     Lockheed Martin developed the Atlas V launch vehicle pursuant to the U.S. Department of Defense's (DOD) Evolved Expendable Launch Vehicle (EELV) Program.

24.     DOD initiated the EELV Program in 1995 to develop a new generation of launch vehicles.  The Atlas V is one of two families of launch vehicles developed under the EELV Program to provide assured and affordable access to space for government satellites via commercially owned and operated launch vehicles.

25.     Atlas V launch vehicles are designed and marketed for commercial and government launches.

26.     The Atlas V launch vehicle family was designed as a multi-stage, medium- to heavy-lift rocket with various potential configurations depending on mission specifications.

27.     The Atlas V incorporates a common core booster.  The Atlas V can be configured to add up to five strap-on solid rocket boosters, an upper stage configured with one or two engines, and various sizes of payload fairings.

28.     Each Atlas V launch vehicle consists of a complex array of integrated systems, including the propulsion systems, vehicle and payload structures, and avionics systems.  To meet a particular customer's mission specifications, these systems and their respective components and subsystems must work together flawlessly under extreme conditions.

29.     Each new configuration of Atlas V components presents new and different engineering and scientific challenges.

30.     Lockheed Martin (previously on its own and now as part of the ULA joint venture) undertakes extensive preproduction design and development efforts with respect to each new configuration of the Atlas V.  To the extent feasible, each part, component, and system is subjected to extensive laboratory testing and analysis.  Throughout the production process and up to launch, the launch vehicle and its various systems are subjected to rigorous preflight testing.

31.     A new launch-vehicle-configuration design cannot be proven or validated until it is actually assembled and successfully launched.

32.     For each launch, an array of sensors gathers information about the status of all critical components and systems.  This information is carefully analyzed as part of a formal post-flight review.  Anomalies identified through this process are analyzed in order to understand their causes and to develop engineering solutions for future missions.

33.     The first Atlas V launch vehicle was launched on August 21, 2002.

34.     By the end of the years at issue, fourteen Atlas V launch vehicles had been launched.

35.     At the time of their respective launches, the four Atlas V launch vehicles described below represented new and unproven configurations for which Lockheed Martin claimed QREs.

Atlas V, Type 431 (INMARSAT)

36.     On May 10, 2005, Lockheed Martin entered into an amended and restated contract with Inmarsat Launch Company Limited under which Lockheed Martin agreed to launch Inmarsat's 4-F1 satellite.

37.     The contract with Inmarsat was a firm fixed-price contract under which Lockheed Martin was to receive a total purchase price of $84,000,000 for launch services.

38.     During the years at issue, Lockheed Martin incurred costs, including those to design, develop, test, integrate, and fabricate a new configuration of the Atlas V launch vehicle that would satisfy the customer's specifications for the Inmarsat 4-F1 mission.

39. Inmarsat's 4-F1 satellite was at the time of launch the heaviest spacecraft to be carried into orbit by an Atlas V launch vehicle.

40. The launch vehicle for the Inmarsat 4-F1 satellite was the first Atlas V rocket to incorporate a four-meter payload fairing and three solid rocket boosters.

41. The launch vehicle was the first Atlas V flight with an extra extended payload fairing (XEPF). It incorporated an additional 0.9-m (36-in.) high cylindrical plug to increase the available payload volume. The XEPF was necessary to accommodate the satellite payload.

42. The launch vehicle was the first Atlas V launch vehicle to use pre-launch pressurization of the upper stage to accommodate the heavy payload and to improve the launch availability of the vehicle.

43. The costs Lockheed Martin incurred to design, develop, test, integrate, and fabricate the launch vehicle that would be used to launch Inmarsat's 4-F1 satellite included wages paid to employees for qualified services (as that term is defined in section 41(b)(2)(B)), amounts paid for supplies (as that term is defined in section 41(b)(2)(C)) that were used in the conduct of qualified research, and contract research expenses (as that term is defined in section 41(b)(3)).

44. For the years at issue, Lockheed Martin claimed these costs as QREs in the computation of its allowable research credit on its original or amended corporate income tax returns.

45. The IRS disallowed some of the claimed QREs associated with the design, development, testing, integration, and fabrication of the launch vehicle for the Inmarsat 4-F1 mission.

46.     For the years at issue, the IRS disallowed the following amount of QREs incurred by Lockheed Martin with respect to the Inmarsat 4-F1 mission:

| YEAR | DISALLOWED QREs |
|------|-----------------|
| 2004 | $        20,792,923 |

47.     On March 11, 2005, Inmarsat's 4-F1 satellite was successfully launched into orbit from Cape Canaveral, Florida, atop an Atlas V launch vehicle, serial number AV-004.

Atlas V, Type 551 (New Horizons)

48.     On June 16, 2000, Lockheed Martin entered into a contract with NASA to provide launch services (the NLS contract).

49.     The NLS contract is an indefinite delivery/indefinite quantity (IDIQ) minimum order contract providing for the delivery of an unspecified number of launches and other services over a period of time.

50.     Under the NLS contract, Lockheed Martin was to receive a firm fixed total purchase price of $130,725,294 for launch services for the New Horizons mission.

51.     The New Horizons mission was intended to send the first spacecraft to fly by and study Pluto and its moons.

52.     During the years at issue, Lockheed Martin incurred costs, including those to design, develop, test, integrate, and fabricate a new configuration of the Atlas V launch vehicle that would satisfy NASA's specifications for the New Horizons mission.

53.     The launch vehicle was the first Atlas V rocket to incorporate a five-meter payload fairing and five solid rocket boosters.

54.     Due to the extended mission duration and distance from the sun, electric power for the New Horizons spacecraft was supplied by a radioisotope thermoelectric generator (RTG) fueled by radioactive plutonium.  The RTG imposed additional design requirements for the New Horizons launch vehicle.

55.     The launch vehicle for the New Horizons mission incorporated an upgraded flight termination system (FTS).  This upgraded system allowed for termination of the vehicle at various stages during the launch both autonomously and by radio signals from ground controllers.

56.     The launch vehicle was the first that contained four composite overwrapped pressure vessels (COPVs).  These four vessels were used to pressurize and expel the propellants to the engine in order to maintain the proper pressures in the tank.  The new design reduced the weight of the common core booster.

57.     To improve launch availability for the New Horizons mission, Lockheed Martin increased the maximum gimbal angle for the common core booster engine.  The increased angle was needed to control the launch vehicle because of the additional thrust supplied by the five solid rocket boosters.

58.     Due to the configuration of the New Horizons spacecraft, Lockheed Martin had to design a new umbilical system that mounted to the payload fairing.  The new umbilical system allowed for proper separation from the spacecraft.

59.     The costs Lockheed Martin incurred to design, develop, test, integrate, and fabricate the launch vehicle that would be used to launch NASA's New Horizons spacecraft included wages paid to employees for qualified services (as that term is defined in section

41(b)(2)(B)), amounts paid for supplies (as that term is defined in section 41(b)(2)(C)) that were used in the conduct of qualified research, and contract research expenses (as that term is defined in section 41(b)(3)).

60.     For the years at issue, Lockheed Martin has claimed these costs as QREs in the computation of its allowable research credit on its original or amended corporate income tax returns.

61.     The IRS disallowed some of the claimed QREs associated with the design, development, testing, integration, and fabrication of the launch vehicle for the New Horizons mission.

62.     For the years at issue, the IRS disallowed the following amounts of QREs incurred by Lockheed Martin with respect to the New Horizons mission:

| YEAR | DISALLOWED QREs |
|------|-----------------|
| 2004 | $       46,393,602 |
| 2005 |        17,921,246 |
| Total | $      64,314,848 |

63.     On January 19, 2006, NASA's New Horizons spacecraft was successfully launched from Cape Canaveral, Florida, atop an Atlas V launch vehicle, serial number AV-010.

64.     The New Horizons spacecraft is expected to fly by Pluto and its moons in July 2015.

Atlas V, Type 411 (ASTRA 1KR)

65.     On October 14, 2005, Lockheed Martin entered into an amended and restated launch services agreement with SES ASTRA S.A. under which Lockheed Martin agreed to launch the ASTRA 1KR satellite.

66.     The ASTRA 1KR was a new telecommunications satellite intended to provide distribution of direct-to-home broadcast services across Europe.

67.     The launch services agreement with SES ASTRA S.A. was a firm fixed-price contract under which Lockheed Martin was to receive a total purchase price of $62,500,000 for Atlas launch services.

68.     During the years at issue, Lockheed Martin incurred costs, including those to design, develop, test, integrate, and fabricate a new configuration of the Atlas V launch vehicle that would satisfy the customer's specifications for the ASTRA 1KR mission.

69.     The launch vehicle for the ASTRA 1KR mission was the first Atlas V rocket to incorporate a lone solid rocket booster.

70.     The launch vehicle was the first Atlas V flight with an X-Stringer, or reduced part count, extended payload fairing.  This extended payload fairing allowed the ASTRA 1KR spacecraft to properly fit within the fairing of the launch vehicle.

71.     The costs Lockheed Martin incurred to design, develop, test, integrate, and fabricate the launch vehicle that would be used to launch the ASTRA 1KR satellite included wages paid to employees for qualified services (as that term is defined in section 41(b)(2)(B)), amounts paid for supplies (as that term is defined in section 41(b)(2)(C)) that were used in the conduct of qualified research, and contract research expenses (as that term is defined in section 41(b)(3)).

72.     For the years at issue, Lockheed Martin has claimed these costs as QREs in the computation of its allowable research credit on its original or amended corporate income tax returns.

73.     The IRS disallowed some of the claimed QREs associated with the design, development, testing, integration, and fabrication of the launch vehicle for the ASTRA 1KR mission.

74.     For the years at issue, the IRS disallowed the following amounts of QREs incurred by Lockheed Martin with respect to the ASTRA 1KR mission:

| YEAR | DISALLOWED QREs |
|------|-----------------|
| 2004 | $        19,048,985 |
| 2005 |          23,826,283 |
| 2006 |           4,282,342 |
| Total | $        47,157,610 |

75.     On April 20, 2006, the ASTRA 1KR satellite was successfully launched into orbit from Cape Canaveral, Florida, atop an Atlas V launch vehicle, serial number AV-008.

Atlas V, Type 421 (WGS SV-1)

76.     On October 16, 1998, Lockheed Martin entered into a contract with the United States Air Force to provide launch services (the ILS contract).

77.     The ILS contract is a requirements contract providing for the delivery of a specified number of launches and other services when and as ordered by the customer.

78.     The Wideband Global SATCOM (WGS) system is a military communications satellite network.

79.     The WGS Space Vehicle 1 (SV-1) was the first satellite of the WGS system.

80.     Under the ILS contract, Lockheed Martin was to receive a firm fixed total purchase price of $119,600,000 for launch services for the WGS SV-1 launch.

81.     During the years at issue, Lockheed Martin incurred costs, including those to design, develop, test, integrate, and fabricate a new configuration of the Atlas V launch vehicle that would satisfy the customer's specifications for the WGS SV-1 mission.

82.     The launch vehicle for the WGS SV-1 mission was the first Atlas V rocket that incorporated a four-meter payload fairing and two solid rocket boosters.

83.     The WGS SV-1 launch vehicle was the first Atlas V to use the newly designed solid rocket booster staging thruster cartridge.

84.     The WGS SV-1 launch vehicle was the first Atlas V that used minimum residual shutdown software.  This software was used to shut down the upper stage after the vehicle launched.

85.     The WGS SV-1 launch vehicle was the first Atlas V to use an S/L band reradiating antenna.  This was a mission-unique modification that allowed payload radio frequency telemetry transmission and command receipt communications after the payload was enclosed in the spacecraft until launch.

86.     The costs Lockheed Martin incurred to design, develop, test, integrate, and fabricate the launch vehicle that would be used to launch the WGS SV-1 spacecraft included wages paid to employees for qualified services (as that term is defined in section 41(b)(2)(B)), amounts paid for supplies (as that term is defined in section 41(b)(2)(C)) that were used in the conduct of qualified research, and contract research expenses (as that term is defined in section 41(b)(3)).

87.     For the years at issue, Lockheed Martin has claimed these costs as QREs in the computation of its allowable research credit on its original or amended corporate income tax returns.

88.     The IRS disallowed some of the claimed QREs associated with the design, development, testing, integration, and fabrication of the WGS SV-1 mission.

89.     For the years at issue, the IRS disallowed the following amounts of QREs incurred by Lockheed Martin with respect to the WGS SV-1 mission:

| YEAR | DISALLOWED QREs |
|------|-----------------|
| 2004 | $        7,480,436 |
| 2005 |         18,999,587 |
| 2006 |         22,313,175 |
| Total | $      48,793,198 |

90.     On October 11, 2007, the WGS SV-1 satellite was successfully launched into orbit from Cape Canaveral, Florida, atop an Atlas V launch vehicle, serial number AV-011.

Additional Atlas V Design and Development Costs

91.     In addition to the QREs disallowed with respect to the four new launch vehicle configurations described above, the IRS disallowed additional Atlas V engineering design and development costs claimed as QREs in the amounts of $2,403,639 for tax year 2004, $2,274,204 for tax year 2005, and $1,239,298 for tax year 2006.

92.     The Atlas V engineering design and development costs Lockheed Martin incurred included wages paid to employees for qualified services (as that term is defined in section 41(b)(2)(B)).

<u>The New York Metropolitan Transportation Authority Surveillance System</u>

93.     In August 2005, the New York Metropolitan Transportation Authority hired Lockheed Martin to design, develop, test, integrate, and fabricate a critical infrastructure surveillance and security system that would centralize command, control, and communications capabilities and provide certain additional capabilities throughout the entire New York City and suburban transportation system.  This project is referred to as the New York MTA Project.

94.     During the years at issue, Lockheed Martin incurred costs, including those to design, develop, test, integrate, and fabricate the New York MTA Project in a manner that would satisfy the customer's mission specifications.

95.     The costs incurred by Lockheed Martin with respect to the New York MTA Project related to qualified research activities including, but not limited to: (i) testing of component functions such as intelligent video systems that would improve the surveillance and security systems of the MTA; (ii) installation of the overall system that integrated the existing MTA surveillance capabilities; and (iii) testing of that system (and various subcomponents) to determine whether the installation was successful or whether additional modifications were required to achieve the design criteria.

96.     The costs Lockheed Martin incurred to design, develop, test, integrate, and fabricate the New York MTA Project included wages paid to employees for qualified services (as that term is defined in section 41(b)(2)(B)), amounts paid for supplies (as that term is defined in section 41(b)(2)(C)) and the installation of those supplies that were used in the conduct of qualified research, and contract research expenses (as that term is defined in section 41(b)(3)).

97.     A large percentage of the New York MTA Project supply costs incurred by Lockheed Martin were related to parts purchased from third-party contractors.  This included substantially all commercial off-the-shelf (COTS) supplies such as cameras, alarms, security access and sensing devices, and network supplies that provided the platform for the component and system testing and that ultimately became part of the installed system.

98.     For the years at issue, Lockheed Martin has claimed these costs as QREs in the computation of its allowable research credit on its original or amended corporate income tax returns.

99.     The IRS disallowed some of the claimed QREs associated with the design, development, testing, integration, and fabrication of the MTA Project.

100.    For the years at issue, the IRS disallowed the following amounts of QREs incurred by Lockheed Martin with respect to the MTA Project:

| YEAR | DISALLOWED QREs |
|------|-----------------|
| 2006 | $     50,442,801 |
| 2007 |        13,009,050 |
| Total | $     63,451,851 |

101.    In April 2009, Lockheed Martin filed suit against the MTA and others alleging a material breach of contract based on the MTA's failure to provide access to sites where work must be performed and customer-furnished equipment necessary to complete the contract.  The MTA filed an answer and counterclaim alleging that Lockheed Martin had breached the agreement.

102.    The MTA subsequently terminated the contract for alleged default.

**Section 199 Refund Claims**

103.    Enacted in 2004, section 199 allows a deduction based on a percentage of qualifying production activities income (QPAI) subject to various caps and limits.  QPAI is a measure of, among other things, income from the sale or lease of property manufactured, produced, grown, or extracted in whole or in significant part in the United States as well as income from certain services performed in the United States.

104.    Lockheed Martin generated QPAI during the years at issue and claimed deductions under section 199.  In computing its section 199 deductions for its 2005 through 2008 tax years, Lockheed Martin incorrectly reduced QPAI by the amount of its extraterritorial income (ETI) exclusion for those tax years.

105.    Under section 199, Lockheed Martin is entitled to additional deductions in its 2005 through 2008 tax years because Lockheed Martin is not required to reduce QPAI by the amount of its ETI exclusion for those tax years.

**ETI Refund Claims**

106.    Enacted in 2000 and repealed (except for certain transition rules discussed below) in 2004, former section 114 provided an exclusion from taxable income for qualified extraterritorial income.

107.    Under former section 114(a), "[g]ross income does not include extraterritorial income."  Former section 114(b) provides that the exclusion under section 114(a) applies only to "qualifying foreign trade income."  Former section 941(a)(1), in turn, provides that in general, "qualifying foreign trade income" with respect to any transaction is "the amount of gross income which, if excluded, will result in a reduction of the taxable income of the taxpayer from such

transaction" equal to the greatest of: (i) 30% of "foreign sale and leasing income"; (ii) 1.2% of "foreign trading gross receipts" (FTGR); or (iii) 15% of "foreign trade income."

108.    Congress repealed section 114 effective for transactions after 2004 and provided transition rules that (i) decreased the amount of ETI excludable from income to 80% (for 2005) and then 60% (for 2006) and (ii) permitted the continued exclusion of ETI from certain "binding contracts."  Pub. L. No. 108-357, § 101(d) and (f), 118 Stat. 1418, 1423, 1424.  In 2006, Congress struck the binding-contract transition rule applicable to tax years beginning after May 17, 2006.  *See* Pub. L. No. 109-222, § 513(b), 120 Stat. 345, 366.

109.    Lockheed Martin had transactions that generated ETI during the years at issue and was eligible for ETI exclusions for the years at issue.

110.    In computing its income exclusion under former section 114 for its 2005 through 2008 tax years, Lockheed Martin did not reduce gross income attributable to FTGR by the amount of its section 199 deductions for those tax years.

111.    The IRS disallowed a portion of Lockheed Martin's income exclusions under section 114 for Lockheed Martin's 2005 through 2008 tax years on the ground that in computing its income exclusions under former section 114 for those tax years, Lockheed Martin should have reduced gross income attributable to FTGR by the amount of its section 199 deductions.

112.    Under former section 114 and the relevant transition rules, Lockheed Martin is entitled to additional income exclusions in its 2005 through 2008 tax years because Lockheed Martin is not required to reduce gross income attributable to FTGR by the amount of its section 199 deductions for those tax years.

## COUNT ONE
## (2004 TAX YEAR)

113.    Lockheed Martin incorporates herein by reference and realleges all allegations in paragraphs 1 through 92 of this Complaint.

114.    On or before September 15, 2005, Lockheed Martin timely filed a Form 1120 federal income tax return for its 2004 tax year with the IRS at Ogden, Utah.  The name, address, and identification number appearing on that return were as follows:

> Lockheed Martin Corporation & Affiliated Corps
> 6801 Rockledge Drive
> Bethesda, MD  20817
> EIN: 52-1893632

115.    During 2004, Lockheed Martin made estimated tax payments in excess of the tax shown on its Form 1120 for its 2004 tax year.  Lockheed Martin received a refund of some portion of that overpayment and had some of the overpayment credited to its 2005 tax year.  Following its examination of Lockheed Martin's 2004 tax year, the IRS assessed additional tax, which Lockheed Martin satisfied in part by way of a payment and a capital loss carryback.  Following administrative review at IRS Appeals, the IRS assessed a small additional amount of tax for Lockheed Martin's 2004 tax year.  As of the date of this complaint, Lockheed Martin has paid in full all assessments for its 2004 tax year.

116.    On February 21, 2012, Lockheed Martin timely filed an amended return on Form 1120X with the IRS, seeking a refund of tax for Lockheed Martin's 2004 tax year on the basis that Lockheed Martin is entitled to refunds attributable to additional research credits under section 41 with respect to its Atlas V Launch Vehicle projects.

117.    The IRS disallowed that claim in full on May 24, 2012.

118.     For the reasons described above, Lockheed Martin overpaid its federal income tax for the 2004 tax year and Lockheed Martin is entitled to a refund of at least $2,135,139, plus statutory interest as the law provides.

## COUNT TWO
## (2005 TAX YEAR)

119.     Lockheed Martin incorporates herein by reference and realleges all allegations in paragraphs 1 through 35, 48 through 92, and 103 through 112 of this Complaint.

120.     On or before September 15, 2006, Lockheed Martin timely filed a Form 1120 federal income tax return for its 2005 tax year with the IRS at Ogden, Utah.  The name, address, and identification number appearing on that return were as follows:

> Lockheed Martin Corporation & Affiliated Corps
> 6801 Rockledge Drive
> Bethesda, MD  20817
> EIN: 52-1893632

121.     During 2005, Lockheed Martin made estimated tax payments for its 2005 tax year.  Following the IRS examination and subsequent IRS Appeals review of Lockheed Martin's 2005 tax year, the IRS determined that Lockheed Martin had tax overpayments for its 2005 tax year.  As of the date of this complaint, Lockheed Martin paid in full all assessments for its 2005 tax year.

122.     On February 21, 2012, Lockheed Martin timely filed an amended return on Form 1120X with the IRS, seeking a refund of tax for Lockheed Martin's 2005 tax year on the basis that Lockheed Martin is entitled to refunds attributable to (i) additional research credits under section 41 with respect to its Atlas V Launch Vehicle projects, (ii) increased deductions under section 199, and (iii) an increased amount of ETI exclusion under former section 114.

123.    The IRS disallowed that claim in full on May 24, 2012.

124.    For the reasons described above, Lockheed Martin overpaid its federal income tax for the 2005 tax year and Lockheed Martin is entitled to a refund of at least $3,701,781, plus statutory interest as the law provides.

## COUNT THREE
## (2006 TAX YEAR)

125.    Lockheed Martin incorporates herein by reference and realleges all allegations in paragraphs 1 through 35 and 65 through 112 of this Complaint.

126.    On or before September 15, 2007, Lockheed Martin timely filed a Form 1120 federal income tax return for its 2006 tax year with the IRS at Ogden, Utah.  The name, address, and identification number appearing on that return were as follows:

> Lockheed Martin Corporation & Affiliated Corps
> 6801 Rockledge Drive
> Bethesda, MD  20817
> EIN: 52-1893632

127.    During 2006, Lockheed Martin made estimated tax payments for its 2006 tax year.  Following the IRS examination and subsequent IRS Appeals review of Lockheed Martin's 2006 tax year, the IRS determined that Lockheed Martin had tax overpayments for its 2006 tax year.  As of the date of this complaint, Lockheed Martin paid in full all assessments for its 2006 tax year.

128.    On February 21, 2012, Lockheed Martin timely filed an amended return on Form 1120X with the IRS, seeking a refund of tax for Lockheed Martin's 2006 tax year on the basis that Lockheed Martin is entitled to refunds attributable to (i) additional research credits under section 41 with respect to its New York MTA and Atlas V Launch Vehicle projects,

(ii) increased deductions under section 199, and (iii) an increased amount of ETI exclusion under former section 114.

129.    The IRS disallowed that claim in full on May 24, 2012.

130.    For the reasons described above, Lockheed Martin overpaid its federal income tax for the 2006 tax year and Lockheed Martin is entitled to a refund of at least $5,152,000, plus statutory interest as the law provides.

**COUNT FOUR**
**(2007 TAX YEAR)**

131.    Lockheed Martin incorporates herein by reference and realleges all allegations in paragraphs 1 through 22 and 93 through 112 of this Complaint.

132.    On or before September 15, 2008, Lockheed Martin timely filed a Form 1120 federal income tax return for its 2007 tax year with the IRS at Ogden, Utah.  The name, address, and identification number appearing on that return were as follows:

> Lockheed Martin Corporation & Affiliated Corps
> 6801 Rockledge Drive
> Bethesda, MD  20817
> EIN: 52-1893632

133.    During 2007, Lockheed Martin made estimated tax payments for its 2007 tax year.  Following the IRS examination and subsequent IRS Appeals review of Lockheed Martin's 2007 tax year, the IRS determined that Lockheed Martin had tax overpayments for its 2007 tax year.  As of the date of this complaint, Lockheed Martin paid in full all assessments for its 2007 tax year.

134.    On February 21, 2012, Lockheed Martin timely filed an amended return on Form 1120X with the IRS, seeking a refund of tax for Lockheed Martin's 2007 tax year on the basis

that Lockheed Martin is entitled to refunds attributable to (i) additional research credits under section 41 with respect to its New York MTA Project, (ii) increased deductions under section 199, and (iii) an increased amount of ETI exclusion under former section 114.

135.    The IRS disallowed that claim in full on May 24, 2012.

136.    For the reasons described above, Lockheed Martin overpaid its federal income tax for the 2007 tax year and Lockheed Martin is entitled to a refund of at least $2,639,619, plus statutory interest as the law provides.

## COUNT FIVE
### (2008 TAX YEAR)

137.    Lockheed Martin incorporates herein by reference and realleges all allegations in paragraphs 1 through 22 and 103 through 112 of this Complaint.

138.    On or before September 15, 2009, Lockheed Martin timely filed a Form 1120 federal income tax return for its 2008 tax year with the IRS electronically.  The name, address, and identification number appearing on that return were as follows:

> Lockheed Martin Corporation & Affiliated Corps
> 6801 Rockledge Drive
> Bethesda, MD  20817
> EIN: 52-1893632

139.    During 2008, Lockheed Martin made estimated tax payments for its 2008 tax year.  Following the IRS Appeals review of Lockheed Martin's 2008 tax year, the IRS determined that Lockheed Martin had tax overpayments for its 2008 tax year.  As of the date of this complaint, Lockheed Martin paid in full all assessments for its 2008 tax year.

140.    On February 21, 2012, Lockheed Martin timely filed an amended return on Form 1120X with the IRS, seeking a refund of tax for Lockheed Martin's 2008 tax year on the basis

- 24 -

that Lockheed Martin is entitled to refunds attributable to (i) increased deductions under section 199, and (ii) an increased amount of ETI exclusion under former section 114.

141.    The IRS disallowed that claim in full on May 24, 2012.

142.    For the reasons described above, Lockheed Martin overpaid its federal income tax for the 2008 tax year and Lockheed Martin is entitled to a refund of at least $3,292,305, plus statutory interest as the law provides.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment against the United States of at least the sum of $16,920,844 representing overpayments in tax by Lockheed Martin, plus statutory interest as the law provides, and such costs and attorneys' fees as are available, and such other and further relief that this Court deems equitable and proper.

DATED:  December 19, 2012.

    /s/ Kevin L. Kenworthy

Kevin L. Kenworthy
       kkenworthy@milchev.com
       Bar No. 18420
Patricia J. Sweeney
       psweeney@milchev.com
       Bar No. 18427
Steven R. Dixon
       sdixon@milchev.com
       Bar No. 18415

**MILLER & CHEVALIER CHARTERED**
655 Fifteenth St. N.W., Suite 900
Washington, DC  20005-5701
Tel.  (202) 626-5800
Fax: (202) 626-5801
*Attorneys for Plaintiff Lockheed Martin*

**OF COUNSEL**
David A. Heywood
Urvi D. Sood
Jason M. Rudinsky
**LOCKHEED MARTIN CORPORATION**
6801 Rockledge Drive
Bethesda, MD 20817